"Five days after date I promise to pay James Latham, or order, *Page 221 
two hundred and eighty-seven dollars, for value of him received. Witness my hand and seal, 1 January, 1810.
ISAAC SMITH. (SEAL.)
Teste: ALEXANDER LATHAM."
"Pay the within note to Grove Wright, or order, for value received.
JAMES LATHAM."
"Washington, 7 November, 1811."
The declaration contained two counts. The first set forth "that Isaac Smith, on 1 January, 1810, by his bond under his hand and seal, at Beaufort aforesaid, promised to pay the said James Latham, or order, the sum of $287, five days after date to-wit, on 6 January, 1810; and the said James Latham, afterwards, to-wit, on 7 November, 1811, at Beaufort county aforesaid, by his indorsement on the said bond in writing, ordered the contents thereof then unpaid to be paid (299) to the Plaintiff, according to the tenor thereof; an the plaintiff, afterwards, to-wit, on 10 November, 1811, at Beaufort county aforesaid, presented the said bond (the same being then payable by the said Isaac Smith) for payment which the said Isaac refused to do: whereof the said James Latham then and there had notice, and thereby became liable; and in consideration thereof then and there promised the Plaintiff to pay him the contents of the said bond, according to the tenor thereof," c.
The second count charged, "that Isaac Smith, of Beaufort county aforesaid, on 1 January, 1810, by his bond, under his hand and seal, promised to pay to the said James Latham, or order, the sum of $287 five days after date, to-wit, on 6 January, 1810; and the said James Latham, afterwards, to-wit, on 7 November, 1811, for a valuable consideration, transferred the said bond to the said Grove Wright; and then and there it was agreed between the said Latham and Wright, that the said Wright should endeavor by legal coercion to obtain payment thereof from the said Isaac Smith; and if such endeavors should prove unavailing, that the said Latham should pay the amount thereof to the said Grove Wright, and the said Wright, after using all legal means to coerce payment of said bond from the said Smith, was unable to procure any satisfaction thereof; of which the said Latham, afterwards, to-wit, on the ____ day of ____, at Beaufort aforesaid, had notice; and in consideration thereof then and there promised, the said Grove Wright to pay him the amount thereof," c.
The Defendant pleaded "the general issue and the statute of limitations." In support of this action, the Plaintiff proved the execution of the endorsement. He proved no demand *Page 222 
on Smith, the obligor in the note, or notice to (300) Latham, unless the evidence hereinafter set forth was properly admissible, and the facts proved, constitute in law such a demand and notice as will make Latham liable. The Plaintiff proved by Slade Pearce, that he was present when the note was indorsed; and that the bond in suit was transferred to Grove Wright in the payment of a debt; that when this bond was offered to Wright, he refused to take it, unless James Latham would indorse it; that at the time of the transfer, it was expressly agreed between Latham, and Wright, that Wright should first bring a suit against Isaac Smith, and then he might have recourse to Latham.
On the part of the present Defendant it was objected, that the testimony of Pearce was inadmissible, and should not go to the Jury, as it proved a contract variant from the contract entered into by Latham, by the written transfer, and contained a condition, not set forth in the indorsement entered on the note. The Court admitted the testimony. The Plaintiff then introduced the record of the Superior Court of Law for Beaufort County, to prove that a writ had been issued on the bond in question on 16 November, 1811, against Isaac Smith, by Grove Wright, assignee of Latham, returnable to Beaufort County Court at December term, 1811. The cause was continued until December, 1812, when the plaintiff was non-suited, and appealed to the Superior Court. The appeal was returnable to Spring term, 1813, and the cause was continued till Fall term, 1814, when the death of the Defendant was suggested, and the suit abated. Slade Pearce proved that Isaac Smith was insolvent, and that, being confined in jail. for debt, on or about 17 May, 1813, he gave notice to his creditors that he intended to avail himself of the act providing for the relief of insolvent debtors; and, among others, a notice was delivered to him Pearse, as the agent of Grove Wright; of which he gave notice to Latham, who answered evasively.
On the abatement of the suit, and during the week (301) in which it did abate, Pearce informed Latham of the abatement, and gave him notice of his liability.
This suit was commenced on 11 April, 1816. Smith and Pearce lived in the same town, and Latham about eight miles from town.
On these facts it was contended, for the Defendant, that the Plaintiff could not recover, 1, Because, on the first count in the declaration, there was no evidence of a demand or notice. 2, Because, on the second count, the Plaintiff had been guilty of such negligence as to make the bond his own. *Page 223 
The presiding Judge charged against the Defendant, and the Jury found a general verdict for the Plaintiff. A rule for a new trial was obtained, upon the grounds, 1, That the testimony of Pearce, proving the agreement between the parties, was improperly admitted. 2. If the testimony be admissible, it did not support either of the counts in the declaration. 3. That the negligence of the Plaintiff in conducting the suit, and in giving notice, had discharged the Defendant.
The rule for a new trial was sent to this Court, and the Judges were divided in opinions — HALL and HENDERSON, Judges, being of opinion that the rule for a new trial should be discharged and judgment given for the Plaintiff; and TAYLOR, Chief Justice, being of a contrary opinion.
The testimony of Pearce is objected to, because it is said it goes to establish the special count, and form a contract variant from that set forth in the indorsement, which is in writing. Without at all impugning the rule, or believing that it ought to be impugned, which forbids the introduction of parol testimony to alter a written agreement, I think, the testimony was properly received. A contract in writing contains, in express terms, or by natural inference, the stipulations into which the parties have thought proper to enter. What is an assignment? It is a name written on the back of a bill or note, in blank or in full, when it is expressed to whom the indorsement is made. Now, who would understand any thing more even (302) from an indorsement in full, than the indorser had parted with his interest in the bill or note, and transferred it to the indorsee? There are no words to this effect, that if the indorsee use diligence to get the money from the drawer or maker, and fail, and then give timely notice to the indorser, that he the indorser shall be liable. How then does the indorser come to stand in that predicament, when there is nothing like it stipulated in the indorsement? The law merchant has placed him in it, and fixed that liability upon him, which he has not subjected himself to by an express contract. If the law has imposed this obligation upon him, it must be for reasons founded in good policy; but when these reasons cease, the obligation loses its force. An instance may be readily given, and that is, where the drawer of a bill has no effects in the hands of the drawee; this fact does not appear from the indorsement; how does it appear? From parol evidence. If the objection to Pearce's testimony, in this case, be good, as altering a written contract, it would be *Page 224 
equally good against the parol evidence in the case just put, where a question was never raised about it. Again, there is authority for saying, that where the drawer or maker is a bankrupt, there is no necessity of giving notice to the indorser, if he knew the fact at the time of the indorsement. How is this to be known without the introduction of parol testimony? I admit this authority has been doubted, but not as to the purpose for which I introduce it, that is, to show that parol evidence is admissible in cases of indorsement, to do away the obligation of an indorsee to give notice, when the nature of the case does not require it. Chitty, in his treatise on Bills, 63, says, "that by the very act of drawing a bill, a man enters into an engagement with the payee, unless it be otherwise agreed, that the person on whom he draws is capable of binding himself by his acceptance, that he is to be found at the place, c." What is meant by the words "otherwise agreed?" do they mean that such agreement shall (303) be inserted in the indorsement, because parol evidence is not admissible to prove? I think not — a majority of the Court are of opinion, that the parol evidence was properly received; that the rule for a new trial must be discharged and judgment be given for the Plaintiff.